UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAYSAN SAYLES and JAIMSON STIRILING, d/b/a SAYLES TRANSPORTATION COMPANY,<br><br>  Plaintiffs,<br><br>v.<br><br>KNIGHT TRANSPORATION COMPANY, INC.,<br><br>  Defendant. | )<br>)<br>)<br>)<br>) No. 4:16-CV-683 RLW<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion to Transfer (ECF No. 14). This matter is fully briefed and ready for disposition.[1]

### BACKGROUND

On April 15, 2016, Plaintiffs filed a lawsuit against Defendant Knight Transportation Company, Inc. ("Knight")[2] in the Circuit Court of St. Louis County, Missouri, styled *Jasan Styles and Jamison Stirling d/b/a Sayles Transportation Company v. Knight Transportation Company*, Inc., Case No. 16SL-CC1376. Knight removed this action to federal court pursuant to 28 U.S.C. §1332, asserting complete diversity of citizenship exists between Plaintiffs and Knight and that more than $75,000 is in dispute.

---

[1] Plaintiffs filed a Motion for Leave to File a Sur-Reply (ECF No. 26). The Court will allow Plaintiff to file the arguments that are included in the Motion (ECF No. 26). To the extent (if any) that Plaintiffs are seeking to file another document, the Motion is denied.

[2] Plaintiffs do not have a contract with Knight Transportation Company, Inc. Rather, Knight Logistics, LLC is the entity with which Plaintiffs contracted. (ECF No. 15 at 2). The Court refers to these two companies interchangeably as "Knight" and notes that both are citizens of Arizona. Plaintiffs admit that Knight is a foreign corporation with its principal place of business located in Arizona.

On August 14, 2014, Sayles Transportation Company ("Sayles") entered into a Transportation Brokerage Agreement with Knight.[3]  As part of the Transportation Brokerage Agreement, Plaintiffs agreed that Sayles would provide contract carriage and related services to Knight pursuant to the terms of the Transportation Brokerage Agreement.  In turn, Knight agreed to pay Sales for the transportation of property.  As part of the Transportation Brokerage Agreement, Sayles agreed to procure and maintain, at its sole cost and expense, minimum insurance coverage, including Commercial Automobile Liability Insurance and Motor Truck Cargo Legal Liability Insurance.  Paragraph 19 of the Transportation Brokerage Agreement, entitled, "Resolution of Disputes" provides, in relevant part, "[t]he parties consent and agree to the exclusive jurisdiction of the federal or state courts of Arizona in any action under this Agreement and that any such court in Arizona will be an appropriate forum for such action."  The Transpiration Brokerage Agreement is the only written agreement between Knight and Plaintiffs or Sayles, other than load confirmation sheets.  In the Complaint, Plaintiffs appear to allege that Knight breached another written contract—a contract for insurance—even though no such written contract for insurance exists between Plaintiffs and Knight.  Rather, approximately fifteen months after entering into the Transportation Brokerage Agreement, Sayles' requested Knight's assistance in obtaining insurance.  Knight referred Sayles to Transtar Insurance Brokers, Inc. ("Transtar").  Sayles applied to become part of a group insurance policy through Transtar.  As part of its application, Sayles also applied to become a member of Avant RPG, Inc., a risk retention group.  In conjunction with its application, Sayles signed a Membership Agreement with Avant RPG, Inc.  On December 4, 2015, Transtar issued a certificate of

---

[3] Knight Brokerage, LLC and Knight Logistics, LLC are the same entity.  On February 3, 2015 Knight Brokerage, LLC changed its named to Knight Logistics, LLC. The Court collectively refers to the Knight entities as "Knight" for simplicity.

insurance to Sayles for the insurance coverage required under the Transportation Brokerage Agreement.

## DISCUSSION

### A. Motion to Transfer

Knight argues that this Court should enforce the forum-selection clause and transfer this entire action to Arizona.

In response, Plaintiffs assert that Knight's Motion is untimely and Knight should have removed this action directly to the District of Arizona. Next, Plaintiffs maintain that, even if Defendant is "based" in Arizona, Missouri still has jurisdiction over Plaintiffs' claims under Missouri's Long-Arm Statute, R.S. Mo. 506.500. (ECF No. 22 at 3). Plaintiffs assert that this Court has jurisdiction over Plaintiffs' claims because the relevant contract relates to Plaintiffs and Plaintiffs' business, which were all located in Missouri at the time of formation of the contract. (ECF No. 22 at 3). Plaintiffs assert that their tort claims do not arise of the contract, but arise out of Knight's

> negligence in cancelling the contract prematurely and in error, but more significantly, Plaintiffs' tort claims arise out of Defendant's negligence, including defamation and tortuous [sic] interference with business expectancy, when Defendant communicated to unrelated third parties, who in turn relied to Plaintiffs' detriment, on Defendant's defamatory representations, resulting in substantial loss of business to Plaintiffs.

(ECF No. 22 at 5). Finally, Plaintiffs maintain that Knight should be estopped from requesting a change in venue "at this late hour" because Knight failed to seek transfer prior to removal. (ECF No. 22 at 5-6).

As an initial matter, the Court holds that Knight's Motion to Transfer is not untimely. Knight was required to remove this case to this federal court prior to seeking a transfer to the

District Court of Arizona. *See* 28 U.S.C. §1446 ("A defendant or defendants desiring to remove any civil action from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal…"). Knight could not have removed this case directly to the District Court of Arizona.

Next, the Court holds that the forum selection clause in the Transportation Brokerage Agreement is an enforceable contract. As a general rule, courts enforce valid forum selection clauses. "[W]hen the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum.'" *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581 (2013) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)). The "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Stewart Org., Inc.*, 487 U.S. at 33. The Court notes that although jurisdiction and venue are appropriate in this forum, personal jurisdiction and venue are also appropriate in Arizona pursuant to the forum selection clause. The Eighth Circuit has held that "[d]ue process is satisfied when a [party] consents to personal jurisdiction by entering into a contract that contains a valid forum selection clause." *Dominium Austin Partners, LLC v. Emerson*, 248 F.3d 720, 726 (8th Cir. 2001); *CIC Grp., Inc. v. Mitchell*, No. 4:10CV1789MLM, 2010 WL 5184990, at *3 (E.D. Mo. Dec. 15, 2010). Plaintiffs waived their argument that venue in Arizona is inconvenient to them because they consented to jurisdiction there under the forum selection clause. *Nicolais v. Balchem Corp.*, No. 4:14-CV-1936 CAS, 2015 WL 6436747, at *2 (E.D. Mo. Oct. 22, 2015) (citing *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 582, (2013) ("Once parties agree to a forum-selection clause, 'they waive the right to

challenge the preselected forum as inconvenient,' and the district court may consider public-interest factors only.").

Finally, the Court holds that all of Plaintiffs' claims are subject to the forum selection clause and the entire case shall be transferred to the District Court in Arizona. "'Whether tort claims are to be governed by forum selection provisions depends upon the intention of the parties reflected in the wording of particular clauses and the facts of each case.'" *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 693 (8th Cir. 1997) (quoting *Berrett v. Life Ins. Co. of the Southwest*, 623 F.Supp. 946, 948–49 (D. Utah 1985)). The forum selection clause provides: "[t]he parties consent and agree to the exclusive jurisdiction of the federal or state courts of Arizona in any action under this Agreement and that any such court in Arizona will be an appropriate forum for such action." The Court construes this clause and determines that this clause does not clearly indicate whether the clause applies to Plaintiffs' tort claims. However, that is not the end of the inquiry. The Eighth Circuit stated that courts should look to three guiding principles to determine whether a forum selection clause applies to tort claims: (1) whether the tort claims ultimately depend upon the relationship created by the existence of the contract, (2) whether resolution of the tort claims relates to the interpretation of the contract, and (3) whether the tort claims involve the same operative facts. *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 694 (8th Cir. 1997). Applying these factors, the Court holds that Plaintiffs' tort claims are covered under the forum selection clause.[4] The Court notes that the

---

[4] Plaintiffs' tort claims include claims for defamation (Count II), tortious interference with a business expectancy (Count IV), and fraudulent misrepresentation (Count V). The Court notes that Plaintiffs' claim for punitive damages (Count VI) cannot stand alone as a separate count. "There is no independent cause of action for punitive damages under either federal or Missouri law." *Jackson v. Asplundh Constr. Corp.*, No. 4:15CV00714 ERW, 2016 WL 4701589, at *3 (E.D. Mo. Sept. 8, 2016) (citing *Jackson v. Wiersema Charter Serv., Inc.*, No. 4:08CV00027 JCH, 2009 WL 1310064, at *3 (E.D. Mo. May 11, 2009) (quoting *Reed v. Bd. of Trs. of*

relationship between Plaintiffs and Knight derives completely from the Transportation Brokerage Agreement. This Agreement is the only agreement between the parties and the sole basis for any business relationship. Plaintiffs' tort claims would not have arisen independent of the Transportation Brokerage Agreement. The Transportation Brokerage Agreement required that Sayles maintain minimum insurance coverage. Based upon that requirement, Sayles obtained insurance from Transtar. The tort claims all relate to Plaintiffs' insurance coverage procured solely to comply with the terms of the Transpiration Brokerage Agreement. Plaintiffs' defamation claim alleges that Defendant attempted to cancel the "insurance contract between Knight and Sayles Transportation Company." (ECF No. 5, ¶26). Therefore, the resolution of Plaintiffs' defamation claim relates to the parties' insurance obligations under the Transportation Brokerage Agreement, the only contract between the parties. Likewise, Plaintiffs' tortious interference with business expectancy claim contends that Knight told transportation company brokers false and unlawful information, such as Sayles "was not covered by any policy of insurance during the relevant time periods" and Knight "breached or induced the breach of these contract/'rate confirmations' without legal justification or excuse." (ECF No. 5, ¶49). And, in the fraudulent misrepresentation count, Plaintiffs allege that Knight misrepresented that Sayles' "insurance policy was cancelled, when in fact such was not the case." (ECF No. 5, ¶55). These allegations regarding insurance coverage depend upon the relationship between Plaintiffs and Knight and relate to Plaintiffs' insurance obligations under the Brokerage Transportation Agreement. The Court holds that all of these tort claims necessarily involve the Brokerage Transportation Agreement and cannot be determined independent of that contract. *See Crescent*

*Columbia College,* No. 07–04155–CV–C–NKL, 2008 U.S. Dist. LEXIS 105167, at *41, 2008 WL 5432287 (W.D. Mo. Dec. 31, 2008)).

*Int'l., Inc. v. Avatar Communities, Inc.,* 857 F.2d 943, 944 (3d Cir.1988) ("[P]leading alternate non-contractual theories is not alone enough to avoid a forum selection clause if the claims asserted arise out of the contractual relation and implicate the contract's terms."); *Tsai v. Karlik*, No. 4:14-CV-244 CEJ, 2014 WL 3687201, at *3 (E.D. Mo. July 24, 2014). Consequently, the Court holds that the tort claims are subject to the forum selection clause in the Brokerage Transportation Agreement. *See Terra Int'l, Inc.*, 119 F.3d at 694. The Court transfers this entire case to the United States District Court for the District of Arizona.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Transfer (ECF No. 14) is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is transferred to the United States District Court for the District of Arizona.

Dated this 2nd day of December, 2016.

*Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**